FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

**IN THE UNITED STATES DISTRICT COURT**

2006 JUN 16 PM 1:25

**MIDDLE DISTRICT OF LOUISIANA**

SIGN_____ _DC_
by DEPUTY CLERK

| | | |
|---|---|---|
| **ENTERTAINMENT SOFTWARE** | * | |
| **ASSOCIATION AND ENTERTAINMENT** | * | |
| **MERCHANTS ASSOCIATION,** | * | |
| | * | |
| **Plaintiffs,** | * | **CIVIL ACTION NO.** 06-431-JJBCN |
| | * | |
| **vs.** | * | |
| | * | **SECTION " "** |
| **CHARLES C. FOTI, JR.,** in his official | * | |
| capacity as Attorney General of the State of | * | |
| Louisiana; and **DOUG MOREAU,** in his | * | **MAGISTRATE** |
| official capacity on behalf of himself as | * | |
| District Attorney for the Parish of East | * | **COMPLAINT-CLASS ACTION** |
| Baton Rouge, and on behalf of a class of | * | |
| similarly situated individuals in their official | * | |
| capacities. | | |
| | | |
| **Defendants.** | | |

### COMPLAINT

Plaintiffs Entertainment Software Association ("ESA") and Entertainment Merchants

Association ("EMA"), by and through their attorneys, aver and allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs are associations whose members include companies that create, publish,

manufacture, distribute, sell, or rent video games to the public. Plaintiffs bring this action

pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against enforcement of a

new Louisiana statute that significantly infringes upon constitutionally protected rights of free

expression.

2. The challenged act, R.S. 14:91.14 (hereinafter, the "Act"), was signed into law on

June 15, 2006, and is effective immediately. The Act criminalizes the sale or rental of video

Dockets.Justia.com

*Summons issued*

games based solely on their expressive content in violation of the First Amendment. Specifically, the Act makes it illegal for anyone in Louisiana to sell, lease, or rent to anyone under the age of 18 a "violent" video game as defined by the Act. A person who violates the Act is subject to a substantial prison term and/or criminal fines. *Id.* § 91.14(C).

3. The Act violates the First Amendment and other provisions of the United States Constitution by imposing criminal penalties on the sale or rental of video games based solely on a game's purportedly "violent" content. The First Amendment prohibits such content-based censorship. Not only does the Act directly restrict the dissemination and receipt of a considerable amount of fully protected expression, but, because of its numerous vague terms, the Act also creates a chilling effect on a great deal of speech, as video game creators, publishers, manufacturers, distributors, and retailers will respond to the Act's uncertainty by self-censoring, depriving both adults and children of access to undeniably protected expression.

4. The Act's prohibitions are essentially identical to those of other laws that have been struck down as unconstitutional. *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001); *Entertainment Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051 (N.D. Ill. 2005); *Entertainment Software Association v. Granholm*, No. 05-73634, --- F. Supp. 2d --- (March 31, 2006, E.D. Mich); *Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034 (N.D. Cal. 2005) (preliminary injunction); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004) ("*VSDA*"); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002) (confirming that the First Amendment protects the communicative aspect of video games, and rejecting attempts to impose tort liability on "violent" video games); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (same); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002) (same).

-2-

5.    Because some of Plaintiffs' members create, publish, manufacture, distribute, sell or rent games that may fall within the statutory definition, they may be subject to liability under the Act. The Act will violate the free speech rights of Plaintiffs' members not only through direct restriction, but also as a result of the Act's inevitable chilling effect on video game expression.

6.    Plaintiffs maintain that (a) the Act is void and of no force and effect because it is unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States and thus actionable under 42 U.S.C. § 1983; and (b) Plaintiffs' members, as well as many citizens of Louisiana, will suffer immediate, serious, and irreparable injury if the Act takes effect.

## JURISDICTION AND VENUE

7.    This action arises under the Constitution of the United States, the First and Fourteenth Amendments thereto, and the laws of the United States, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3). This action is brought against the defendants in their official capacity pursuant to 42 U.S.C. § 1983.

8.    Venue is proper in the Middle District of Louisiana. Many of Plaintiffs' members are located in and/or do business in this judicial district, and the claims thus arise in this district. Upon information and belief, Defendant Moreau also resides in this judicial district, and is responsible for enforcing the Act within this judicial district.

## PARTIES

9.       Plaintiff ESA is a nonprofit trade association organized under the laws of the State of Delaware with its principal place of business in the District of Columbia. A fundamental purpose of ESA is to serve and promote the business and public affairs interests of companies that publish entertainment software used for video games, including such companies' right to publish and distribute works of expression that are protected under the First Amendment to the United States Constitution and similar provisions of the constitutions of various states. ESA members include a number of entities that create, publish, produce, and/or distribute video games to owners and operators of sales and rental outlets within Baton Rouge and throughout Louisiana.

10.      Plaintiff EMA is a not-for-profit international trade association dedicated to advancing the interests of the $32 billion home entertainment industry. It was established in April 2006 through the merger of the Video Software Dealers Association and the Interactive Entertainment Merchants Association. EMA is incorporated in the State of Delaware and its principal place of business is Los Angeles, California. EMA represents more than 1,000 companies throughout the United States, Canada, and other nations. Its members operate more than 20,000 retail outlets in the United States, including approximately 250 in Louisiana, that sell and/or rent DVDs and computer and console video games. Membership comprises the full spectrum of retailers (from single-store specialists to multi-line mass merchants), distributors, the home video divisions of major and independent motion picture studios, and other related businesses that constitute and support the home entertainment industry.

11.      The interests that Plaintiffs ESA and EMA seek to protect in this action are germane to the purposes of each organization, and neither the claims nor the forms of relief

-4-

sought in this action require participation by individual members of Plaintiffs. One or more members of each association have standing to bring this action in their own right.

12.     Plaintiffs are threatened with immediate, serious, and irreparable injury as a result of the enactment and imminent enforcement of the Act. Under the Act, Plaintiffs' members are subject to liability for disseminating works fully protected under the First Amendment. The Act will have an immediate and vast chilling effect upon constitutionally protected speech because those who sell, rent, or permit to be sold or rented video games will, to avoid liability under the Act, refrain from offering for rental or sale a wide array of games, either to minors or to all customers. This will in turn chill video game creators, publishers, manufacturers, and distributors from creating, publishing, manufacturing, and distributing works that may be considered to run afoul of the Act's broad definition of prohibited content.

13.     The Act will also cause irreparable harm to willing listeners—including both those under age 18 and adults—who will be deprived of the ability to hear speech from Plaintiffs' members. In this facial challenge to the Act, Plaintiffs have standing to assert not only their own rights and harm, but also that of the potential recipients of speech from Plaintiffs' members.

14.     Defendant Charles C. Foti, Jr. is the Attorney General of the State of Louisiana. He is the "chief legal officer" of the State and has the authority, upon written request of a district attorney, "to advise and assist in the prosecution of any criminal case" and for cause, when authorized by the court, "to institute, prosecute, or intervene in any criminal action or proceeding, or to supersede any attorney representing the state in any civil or criminal action." La. Const. 1974 Art. 4, § 8. The Attorney General also "shall exercise other powers and perform

Case 3:06-cv-00431-JJB-CN   Document 1   06/16/2006   Page 5 of 23

other duties authorized by the constitution or by law." La. Const. 1974 Art. 4, § 8. The Attorney General exercises "supervision over all district attorneys in the state" and "has authority to institute and prosecute, or to intervene in any proceeding, as he may deem necessary for the assertion or protection of the rights and interests of the state." La. C.Cr.P. Art. 62(A), (B). This injunctive action is brought against Attorney General Foti in his official capacity.

15.     Defendant Doug Moreau is the District Attorney responsible for enforcing the law within the Parish of East Baton Rouge. The district attorney has "charge of every criminal prosecution by the state in his district." La. Const. Art. 5, § 26. Subject to the supervision of the attorney general, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. C.Cr.P. Art. 61. This injunctive action is brought against District Attorney Moreau in his official capacity.

16.     Defendant Doug Moreau is also the designated class representative of a class consisting of each of the 41 district attorneys in the State of Louisiana. This injunctive action is brought against the class members in their official capacities.

## BACKGROUND

### Video Games and the First Amendment

17.     The Act seeks to regulate the expressive medium of video games and limit access to certain video games based solely on the content of the expression depicted or contained therein.

18.     Video games are a form of artistic expression much like other forms of protected expression, such as movies, books, and music. Video games contain extensive storylines and character development, comparable to that of books and movies. The storylines and plot, and associated dialogue among characters, continue throughout the game play and are an integral part of the game itself. Like the best of literature, the storylines often involve familiar themes such as good versus evil, triumph over adversity, struggle against corrupt governments and rulers, and/or quest for adventure. Expression in other media, such as movies and books, draws thematic ideas directly from video games. Video games similarly draw and evolve themes from other media.

19.     Video games also feature the artwork of some of the best modern graphic artists. The typical video game contains many different animated or computer-generated illustrations. Video games also contain music, much of it original and performed by top musicians and orchestras. Like the music that plays during movies, the music in video games enhances and complements the expression conveyed by the images and dialogue, often in dramatic fashion.

20.     The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press," U.S. Const. amend. I, and the prohibitions of the First Amendment apply to the State of Louisiana, U.S. Const. amend. XIV.

21.     The First Amendment shields verbal expression, written expression, visual expression, entertainment, art, and music. The protections of the First Amendment apply just as much to video games as they do to books, newspapers, films, theater, and music.

22.     The First Amendment also protects expressions and depictions of violence devoid of obscene sexual content. Thus, video games depicting violence—like movies or illustrations that depict violence—are fully protected by the First Amendment.

## The Act's Restrictions on Protected Speech

23.     The Act was passed by the Louisiana Legislature on June 6, 2006, and was signed into law by Governor Blanco on June 15, 2006. A true, complete, and accurate copy of the Act is attached hereto as Exhibit 1, and is incorporated herein as if fully set forth. The Act is effective immediately.

24.     The Act seeks to suppress video game expression containing depictions of violence because of the supposed effects of that expression on minors under the age of 18. The Act asserts that the restrictions on speech are justified by a compelling state interest in protecting "its citizens from physical, psychological, and financial harm during the time in which they are particularly vulnerable due to their age and immaturity." Act § 1.

25.     Section 91.14(A) of the Act would impose restrictions on freedom of expression by imposing criminal sanctions on anyone who sells, leases, or rents a prohibited "interactive video or computer game" to a minor. Act, § 91.14(A). A minor is defined as a person under 18 years of age. *Id.* § 91.14(B)(3). "Interactive video or computer game" means "an object or device that stores recorded data or instructions, receives data or instructions generated by a

person who uses it and by processing the data or instructions, creates an interactive game capable

of being played or viewed on or through a computer, gaming system, console, or other

technology." *Id.* § 91.14(B)(1).

26.     The video games proscribed by the Act are those that meet all of the following

criteria:

> (1) The average person, applying contemporary community standards, would find
> that the video or computer game, taken as a whole, appeals to the minor's morbid
> interest in violence.

> (2) The game depicts violence in a manner patently offensive to prevailing
> standards in the adult community with respect to what is suitable for minors.

> (3) The game, taken as a whole, lacks serious literary, artistic, political, or
> scientific value for minors.

Act, § 91.14(A).

27.     A person who violates the Act "shall be fined not less than one hundred dollars

nor more than two thousand dollars or imprisoned, with or without hard labor, for not more than

one year, or both." § 91.14(B)(3).

### The Act Violates the First Amendment

28.     By restricting the sale or rental of video games containing the proscribed

"violent" content, the Act imposes penalties based on the content of the games' expression. The

Act therefore is subject to the most exacting scrutiny under the First Amendment.

29.     No compelling state interest exists that justifies the broad suppression of speech

imposed by the Act. The Act is based on a purported State interest in protecting minors from

undefined "physical, psychological, and financial harm" purportedly caused by the video games

restricted by the Act. Act § 1(a). But the State may not seek to suppress expression based on the

-9-

theory that it will cause individuals to act violently, unless the State can show that the speech is directed to and likely to cause imminent violent action. The Act is devoid of any legislative finding or underlying evidence that the video games covered by the Act are directed to and likely to cause imminent violent action – and nor could such a showing be made, as every court to have considered the issue has concluded. Further, outside of a very narrow category of sexually explicit speech, the State may not restrict expression based on the view that it negatively affects adults' or minors' views, beliefs, or personalities. In any event, the Act lacks any underlying legislative finding that "violent" video games are "harmful" to minors.

30.     Even assuming, *arguendo*, that the state had put forward a legitimate state interest in abridging the First Amendment rights of minors, the Act is not the least restrictive means of achieving any of the Legislature's asserted goals, and the Legislature refused to consider less speech-restrictive means of regulating minors' access to "violent" video games, including those that were proposed by Plaintiffs (such as educational efforts, parental controls, and retailer enforcement initiatives).

31.     The Act presents Plaintiffs' members with the possibility of arbitrary and discriminatory enforcement because the Act fails to set forth minimal standards for enforcement. The Act does not set forth adequately specific standards for determining which video games fall within the Act's prohibitions. The Act is rife with unconstitutionally vague terms, which fail to give reasonable notice of what conduct is prohibited. The vague terms include, but are not limited to: "the minor's morbid interest in violence" and depictions of violence that are "patently offensive to prevailing standards in the community as to what is suitable for minors." These terms have no clear meaning, especially in the context of video games. And because video games offer the player a wide range of possible game play of significant duration, those who

-10-

create, publish, manufacture, distribute and/or sell or rent video games in Louisiana would be expected to review the entire possible course of play in a particular game to ensure that the game did not violate the Act. As a result, video game retailers will steer far away from even potentially prohibited games to avoid the Act's criminal penalties. The significant burdens imposed by the law will ultimately lead to a chilling of speech of video game creators, publishers, manufacturers, distributors, retailers and consumers.

32. The Act would infringe the First Amendment rights of (i) businesses physically present in Louisiana, including Plaintiffs' members, who face the threat of prosecution if they do not comply with restrictions on their right to distribute constitutionally protected expression, (ii) potential customers of those businesses—including both those under 18 as well as adults— who, because of these restrictions, will be deprived of the opportunity to receive fully protected speech, and (iii) businesses located outside Louisiana, including members of Plaintiffs, whose ability to distribute their creative works within Louisiana will be burdened based on the content of those works of expression.

33. The Act threatens Plaintiffs' members and other businesses that create, publish, manufacture, distribute, sell, or rent video games, as well as adults and those under 18 who wish to receive the speech in those games, with serious, immediate, and irreparable injury for which there is no adequate remedy at law.

34. In this facial constitutional challenge to the Act, Plaintiffs have standing to assert the rights of, and harm to, the potential customers of Plaintiffs' members.

35.    The Act would cause Plaintiffs' members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

36.    In the event Plaintiffs prevail on any claims under the Constitution of the United States set forth in this Complaint, Plaintiffs are entitled to recover attorneys' fees under 42 U.S.C. § 1988.

## CLASS ALLEGATIONS

37.    This class action is properly maintained under Fed. R. Civ. P. 23(b)(2) as the conduct of the defendant class members is uniform and the Plaintiffs are seeking injunctive and declaratory relief. *Baker v. Wade*, 769 F.2d 289 (5th Cir. 1985) (en banc).

38.    The class meets Rule 23's numerosity requirement. The class consists of each of Louisiana's 41 district attorneys. Joinder of all of these defendants would be impracticable.

39.    The class meets Rule 23's commonality requirement. All members of the defendant class are charged with enforcing the same unconstitutional Act, and Plaintiffs' grounds for challenging the law are the same with respect to each class member. Namely, Plaintiffs will argue that each class member should be enjoined from enforcing the Act because it violates their rights under the First Amendment and the Fourteenth Amendment.

40.    The class meets Rule 23's typicality requirement. Defendant Moreau is identically situated to the other class members in all relevant respects. Plaintiffs' legal claims are the same with respect to Defendant Moreau as they are with respect to all other class members.

41.     The class meets Rule 23's adequacy of representation requirement. All class members, including Defendant Moreau, have a similar interest and obligation to enforce the Act. There is no reason to think that Defendant Moreau would not adequately be able to represent the class's interests in this matter.

42.     Class treatment is necessary to provide complete relief to Plaintiffs by ensuring that the Act will be enjoined with respect to each official who could enforce it.

## COUNT I

### (First and Fourteenth Amendments—Freedom of Expression)

43.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 43 as if fully set forth herein.

44.     The Act would restrict access to video games based solely upon the content of the creative expression depicted. The content of the expression made subject to these restrictions is not obscene or obscene as to minors. Nor does it fall within any other category of expression that may constitutionally be regulated based solely upon its content.

45.     The Act imposes unconstitutional content regulation by prohibiting a person from disseminating any video game meeting the statutory definition to any person under the age of 18. The Act restricts the freedom of video game creators, publishers, manufacturers, distributors, and retailers, as well as purchasers, renters, and other players of such games, to communicate and receive expression that is not constitutionally subject to regulation based upon its content. The Act's suppression of video games is unsupported by any legislative finding, or underlying evidence, that exposure to such expression is directed to and likely to cause imminent violent

Case 3:06-cv-00431-JJB-CN     Document 1     06/16/2006     Page 13 of 23

action by the game player. Moreover, the Act's stated purposes are not based on credible evidence and are not sufficient under the First Amendment to justify the broad content discrimination imposed by the Act. Not only does the Act fail to serve a compelling governmental interest, but the Act is not narrowly tailored to serve any such interest, and the Legislature did not give adequate consideration to less speech-restrictive means of achieving its goals.

46.     The Act does not establish standards for determining which games contain content meeting the description set forth in Paragraph 25 hereof. The Act would impose upon those who disseminate video games the burden of determining whether each such video game meets the description set forth in Paragraphs 25 hereof, prior to distributing or otherwise holding that game out to the public. The Act imposes upon every such person the risk of substantial criminal penalties. This burden and risk are aggravated by the vagueness of the statutory description of the regulated content. The Act thus would establish an unconstitutional scheme of censorship under which even works of expression that do not meet the statutory description in the Act would be suppressed because of the burden placed upon video game publishers, manufacturers, distributors, and retailers of determining the scope of the Act's coverage and because of the risk of erroneous determinations. Persons disseminating video games (and their respective manufacturers and distributors) would be induced to refuse to include certain works in their inventories or on their premises, for fear of running afoul of the Act's ambiguous prohibitions. Imposition of this burden and risk serves no compelling interest and is not narrowly tailored to serve any such interest.

47.     For each of the reasons set forth above, and others, the Act is unconstitutional under the First Amendment to the United States Constitution, as applied to the State of Louisiana

by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Act would cause Plaintiffs' members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

**COUNT II**

**(First and Fourteenth Amendments—Vagueness)**

48.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 47 as if fully set forth herein.

49.     The Act is unconstitutionally vague because it is rife with terms that fail to give reasonable notice of what conduct is prohibited. The vague terms include, but are not limited to: "the minor's morbid interest in violence" and depictions of violence that are "patently offensive to prevailing standards in the community as to what is suitable for minors." These terms have no clear meaning, especially in the context of video games. For example, how would a person assess whether a particular video game appeals to a minor's "morbid interest in violence"? And what constitutes a "patently offensive" depiction of violence? Persons of ordinary intelligence are forced to guess at the meaning and scope of the Act.

50.     The unconstitutional vagueness of the Act will have a chilling effect on video game creators, publishers, manufacturers, distributors, importers and retailers and on those who seek to hear and view the prohibited video games. In addition, the Act will impose substantial burdens upon persons who sell, rent, or permit to be sold or rented video games, preventing them from exercising their constitutionally protected freedom of expression. The Act's vagueness is

also likely to lead to enforcement by law enforcement officials on an unfair, subjective, and *ad hoc* basis. Because many of the Act's terms have no clear meaning, the Act will restrict a far broader range of video games than even the State claims it is seeking to regulate, because manufacturers, distributors, and importers likely will respond to the uncertainty and fear of penalties by withholding a much broader category of video games. As a result, Plaintiffs' members' protected expression will not reach willing recipients.

51.     For each of the reasons set forth above, and others, the Act is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as the First Amendment to the United States Constitution, as applied to the State of Louisiana by the Due Process Clause of the Fourteenth Amendment. The Act would cause Plaintiffs' members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

**COUNT III**

**(Fourteenth Amendment—Equal Protection)**

52.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 51 as if fully set forth herein.

53.     The Act regulates and restricts under the threat of substantial penalties certain works of expression presented through the medium of video games. These same regulations, restrictions, and penalties do not apply to other works of expression containing the same or similar content, but communicated in other media, including, by way of example only, cable

Case 3:06-cv-00431-JJB-CN     Document 1     06/16/2006     Page 16 of 23

television, broadcast television, movies, books, magazines, and the like. Indeed, many of these other media—which compete with video games for consumers—contain expression that is based on video games that could fall within the prohibitions of the Act. Likewise, video games that could fall within the Act's prohibitions may themselves be based on similar speech in other, unregulated media.

54.     The Act arbitrarily and irrationally would establish a legislative scheme of classifications that burden fundamental rights and that are not closely related to any compelling state interest.

55.     For the foregoing reasons, and others, the Act is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Act would cause Plaintiffs' members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that this Court enter a judgment in Plaintiffs' favor and against Defendants as follows:

(a)     That this Court issue a declaratory judgment that the Act is void and of no force and effect;

(b)     That this Court issue a preliminary injunction and a permanent injunction against Defendants enjoining them from enforcing, or directing the enforcement of, the Act in any respect;

(c)     That Plaintiffs be awarded their attorneys' fees under 42 U.S.C. § 1988;

(d)     That Plaintiffs be awarded their costs herein; and

-17-

(e)     That this Court order such other general and equitable relief as it
        deems fit and proper.

                          Respectfully submitted,

                          _____
                          James A. Brown, T.A. (Bar #14101)
                          George Denegre, Jr. (Bar #8387)
                          LISKOW & LEWIS
                          One Shell Square
                          701 Poydras Street, Suite 5000
                          New Orleans, LA 70139-5099
                          Telephone:     (504) 581-7979
                          Facsimile:     (504) 556-4108

                          Attorneys for Entertainment Software Association
                          and Entertainment Merchants Association

                          Of Counsel:

                          Paul M. Smith
                          Katherine A. Fallow
                          Matthew S. Hellman
                          JENNER & BLOCK LLP
                          601 13th Street, NW, Suite 1200
                          Washington, DC 20005
                          Telephone:     (202) 639-6000
                          Facsimile:     (202) 639-6066

625756_1.DOC

Regular Session, 2006

HOUSE BILL NO. 1381   (Substitute for House Bill No. 421 by Representative Burrell)

BY REPRESENTATIVES BURRELL, ALARIO, ALEXANDER, ARNOLD, BADON,
BAUDOIN, BAYLOR, BEARD, BRUCE, BURNS, K. CARTER, CRANE,
CRAVINS, CROWE, CURTIS, DAMICO, DANIEL, DARTEZ, DOERGE,
DORSEY, DURAND, ERDEY, FANNIN, FAUCHEUX, FRITH, GRAY, GREENE,
E. GUILLORY, M. GUILLORY, HARRIS, HEBERT, HOPKINS, HUTTER,
JEFFERSON, KATZ, KENNEY, LABRUZZO, LAFLEUR, LAFONTA,
MARTINY, MCDONALD, MCVEA, PIERRE, M. POWELL, T. POWELL,
QUEZAIRE, RITCHIE, ROMERO, SALTER, SCALISE, SMILEY, GARY SMITH,
JANE SMITH, JOHN SMITH, ST. GERMAIN, STRAIN, THOMPSON,
TOWNSEND, TRAHAN, TRICHE, TUCKER, WADDELL, WALKER,
WALSWORTH, AND WHITE AND SENATORS BROOME, N. GAUTREAUX,
KOSTELKA, LENTINI, AND ROMERO

1                                   AN ACT

2    To  enact R.S. 14:91.14, relative to offenses affecting the health and morals of minors; to

3              provide with respect to the sale, exhibition, or distribution of material harmful to

4              minors; to provide for definitions; to create the crime of prohibited sales of computer

5              or video games to minors; to provide for definitions; to provide for penalties; and to

6              provide for related matters.

7    Be it enacted by the Legislature of Louisiana:

8              Section 1.  The legislature finds that children are the most precious resource of this

9    state and that they are worthy of special protection from their government.  The laws of

10   Louisiana contain extensive provisions which afford children additional protection by

11   prohibiting them from voting, entering into marriage, purchasing or publicly possessing

12   alcoholic beverages, purchasing tobacco products, participating in gaming activities, entering

13   into contracts, and purchasing harmful materials.  The legislature has also enacted wholly

14   distinct provisions for identifying children who are in need of care and establishing a means

15   to provide those children with appropriate services.  These laws demonstrate Louisiana's

16   commitment to protect its citizens from physical, psychological, and financial harm during

17   the time in which they are particularly vulnerable due to their age and immaturity.  In

18   enacting this Act, the Louisiana Legislature clearly demonstrates the states compelling

CODING: Words in struck through type are deletions from existing law; words underscored
are additions.

EXHIBIT
1

Case 3:06-cv-00431-JJB-CN     Document 1     06/16/2006     Page 19 of 23

1    governmental interest in protecting children and that it seeks to incorporate the extensive

2    protections otherwise afforded to minors in this state to the area of interactive video and

3    computer games.

4         Section 2.  R.S. 14:91.14 is hereby enacted to read as follows:

5         §91.14.  Prohibited sales of video or computer games to minors

6              A.  An interactive video or computer game shall not be sold, leased, or rented

7    to a minor if the trier of fact determines all of the following:

8              (1)  The average person, applying contemporary community standards, would

9    find that the video or computer game, taken as a whole, appeals to the minor's

10    morbid interest in violence.

11             (2)  The game depicts violence in a manner patently offensive to prevailing

12    standards in the adult community with respect to what is suitable for minors.

13             (3)  The game, taken as a whole, lacks serious literary, artistic, political, or

14    scientific value for minors.

15             B.  For the purposes of this Section:

16             (1)  "Interactive video or computer game" means an object or device that

17    stores recorded data or instructions, receives data or instructions generated by a

18    person who uses it and by processing the data or instructions, creates an interactive

19    game capable of being played or viewed on or through a computer, gaming system,

20    console, or other technology.

21             (2)  "Computer" includes an electronic, magnetic, optical, or other high-speed

22    data processing device or system performing logical, arithmetic, and storage

23    functions and includes any property, data storage facility, or communications facility

24    directly related to or operating in conjunction with such device or system.

25    "Computer" shall not include an automated typewriter or typesetter, a machine

26    designed solely for word processing, or a portable hand-held calculator, nor shall

27    "computer" include any other device which might contain components similar to

28    those in computers but in which the components have the sole function of controlling

29    the device for the single purpose for which the device is intended.

30             (3)  "Minor" means any person under the age of eighteen years.

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored
are additions.

Case 3:06-cv-00431-JJB-CN    Document 1    06/16/2006    Page 20 of 23

1          C. Whoever is found guilty of violating the provisions of this Section shall

2     be fined not less than one hundred dollars nor more than two thousand dollars or

3     imprisoned, with or without hard labor, for not more than one year, or both.

4          Section 3. This Act shall become effective upon signature by the governor or, if not

5     signed by the governor, upon expiration of the time for bills to become law without signature

6     by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana. If

7     vetoed by the governor and subsequently approved by the legislature, this Act shall become

8     effective on the day following such approval.


_____
SPEAKER OF THE HOUSE OF REPRESENTATIVES


_____
PRESIDENT OF THE SENATE


_____
GOVERNOR OF THE STATE OF LOUISIANA

APPROVED: _____

CODING: Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

Case 3:06-cv-00431-JJB-CN    Document 1    06/16/2006    Page 21 of 23

# IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ENTERTAINMENT SOFTWARE
ASSOCIATION AND ENTERTAINMENT
MERCHANTS ASSOCIATION,

    Plaintiffs,

vs.

CHARLES C. FOTI, JR., in his official
capacity as Attorney General of the State of
Louisiana; and DOUG MOREAU, in his
official capacity on behalf of himself as
District Attorney for the Parish of East
Baton Rouge, and on behalf of a class of
similarly situated individuals in their official
capacities.

    Defendants.

CIVIL ACTION NO.

SECTION " "

MAGISTRATE

## DECLARATION OF GAIL MARKELS

Pursuant to 28 U.S.C. § 1746, I, Gail Markels, under penalty of perjury state as follows:

1.    I am the Senior Vice President and General Counsel for the Entertainment Software Association, which is one of the Plaintiffs in the above action.

2.    To the best of my knowledge, belief, and information, the allegations of fact in the complaint in this action are true.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on June 16, 2006.

_____
Gail Markels

%JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Entertainment Software Association and Entertaiment Merchants Association

**DEFENDANTS**

Charles Foti, Jr., Attorney General; Doug Moureau, District Attorney, Parish of East Baton Rouge, and a class of similiarly situated individuals

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

James A. Brown, George Denegre, Jr. , Liskow and Lewis, 701 Poydras Street, Suite 5000, NOLA 70139 504-581-7979

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plainti and One Box for Defendant)
(For Diversity Cases Only)

| | DEF | | DEF |
|---|---|---|---|
| Citizen of This State ☐1 ☐1 | | Incorporated or Principal Place of Business In This State ☐4 ☐4 | |
| Citizen of Another State ☐2 ☐2 | | Incorporated and Principal Place of Business In Another State ☐5 ☐5 | |
| Citizen or Subject of a Foreign Country ☐3 ☐3 | | Foreign Nation ☐6 ☐6 | |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 820 Copyrights | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☑ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff | Determination |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | or Defendant) | Under Equal Access to |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☑ 950 Constitutionality of |
| | | ☐ 550 Civil Rights | Security Act | 26 USC 7609 | State Statutes |
| | | ☐ 555 Prison Condition | | | ☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. Sec. 1983; Challenge constitutionality of state statute

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☑ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 6/16/06

SIGNATURE OF ATTORNEY OF RECORD *James A. Brown*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUN _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

469003321

Case 3:06-cv-00431-JJB-CN    Document 1    06/16/2006    Page 23 of 23