## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION AND ENTERTAINMENT MERCHANTS ASSOCIATION | CIVIL ACTION NO. 06-431-JJB-CN |
| **Plaintiffs** | |
| VERSUS | |
| CHARLES C. FOTI, in his official capacity as Attorney General of the State of Louisiana; and DOUG MOREAU, in his official capacity on behalf of himself as District Attorney for the Parish of East Baton Rouge, and on behalf of a class of similarly situated individuals in their official capacities | JUDGE BRADY COMPLAINT-CLASS ACTION |
| **Defendants** | |

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

## DEFENDANT CHARLES C. FOTI, JR.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

**MAY IT PLEASE THE COURT:**

Defendant, Charles C. Foti, Jr., Attorney General in and for the State of Louisiana, through the undersigned Assistant Attorneys General, submits this Memorandum in Opposition to Plaintiffs' Request for Injunctive Relief. For the reasons more particularly discussed hereinbelow, Plaintiffs are not entitled to a preliminary injunction as they are unable to meet the strict requirements for injunctive relief.

Dockets.Justia.com

## I. GENERAL BACKGROUND AND PRELIMINARY STATEMENT OF CASE.

In the ordinary legislative session of 2006, the Louisiana Legislature enacted Louisiana Revised Statute 14:91.14 which was signed into law by Louisiana Governor Kathleen Blanco on June 15, 2006. The title of the act indicates that it was germane to the following subjects:

> "*relative to the offenses affecting the health and morals of minors, to provide with respect to the sale, exhibition, or distribution of material harmful to minors; to provide for definitions, to create the crime of prohibited sales of computer or video games to minors; to provide for definitions; to provide for penalties; and to provide for related matters.*"

The complaint herein was filed by the Entertainment Software Association and the Entertainment Merchants Association against the Louisiana Attorney General, in his official capacity, and the District Attorney for the 19th Judicial District Court for the Parish of East Baton Rouge in his official capacity and as representative of a purported class which includes the 41 elected District Attorneys in the State of Louisiana who have original prosecutorial discretion to bring an action under the statute.

The plaintiff associations are the major players in a multi billion dollar industry who are, by their allegations and assertions, attempting to package clearly extraordinarily violent and lawless promotional interactive training videos within the wrappings of the constitutional provisions of commercial "free speech".

In attempting to utilize a facial attack on a valid state statute, they seek to have this court examine only the plain exterior of what is portrayed as simple

2

expressions of art and speech. Their attack on the statute is a facial one. Their argument that content is of no relevance in the present matter and that any regulation of content is a prohibited government act is an attempt to hide the true nature and effect of certain extraordinary violent games to the children of Louisiana. The plaintiffs assert herein the same position as they have done in other jurisdictions which have attempted to enact similar legislation. This "Plain Brown Wrapper" approach is asserted by the plaintiff organizations in order to prevent any inquiry into the substantive issue at hand, i.e., the effect of their products on the youth of the United States and the State of Louisiana.

The State of Louisiana, under its sovereign authority to protect the most precious of its citizens, (those who have not obtained the age of majority), has properly elected to regulate the sale and rental of extraordinarily violent video games to its children. The act does not in any way impose penalties or prohibitions for possession, processing or promotion of any product. It in no way restricts the activities of sellers to adult buyers. It makes no product contraband, it makes no creative artistic expression illegal and it makes no part of the industry responsible if their video products happen to be viewed by those persons who have not obtained the age of majority in Louisiana.

The Attorney General, as defendant, requests that instead of the plain brown wrapper approach, that the court examine this issue with the transparency of the cellophane in which these videos are actually sold along with a full scrutiny

Case 3:06-cv-00431-JJB-CN    Document 18    06/27/2006    Page 3 of 13

of the content and effect that they have upon the minds of our most vulnerable citizens.

Plaintiffs seem to assume that the Louisiana Legislature and the Governor of our state have passed this act in a vacuum, totally unaware of the statutes and case law that has been published prior to 2006. However Louisiana's present enactment of R.S. 14:91.14 was specifically crafted and enacted with the constitutional, statutory and case law in mind. It is the most narrowly drawn statute of its nature to date and incorporates specific preliminary steps which must be taken prior to its enforcement by any prosecutorial agency.

Plaintiffs specifically assert that no compelling government interest and purpose exists. The stated purpose of the statute in question is clear and is stated in its preamble as follows:

> "*The Legislature finds that children are the most precious resource of this state and that they are worthy of special protection from their government. The laws of Louisiana contain extensive provisions which afford children additional protection by prohibiting them from voting, entering of marriage, purchasing or publicly possessing alcoholic beverages, purchasing tobacco products, participating in gaming activities, entering into contracts and purchasing harmful materials. The legislature has also enacted wholly distinct provisions for identifying children who are in need of care and establishing a means to provide those children with appropriate services. These laws demonstrate Louisiana's commitment to protect its citizens from physical, psychological, and financial harm during the time when they are particularly vulnerable due to their age and immaturity. In enacting this Act, the Louisiana Legislature clearly demonstrates the state's compelling governmental interest in protecting children and that it seeks to incorporate the extensive protections otherwise afforded to minors in this state to the area of interactive video and computer games.*"

4

Plaintiffs, by somewhat conceding *in arguendo* that a compelling and valid public purpose exists, next argue that should this purpose be deemed a legitimate one, that the method by which the State of Louisiana has sought to pursue it must necessarily be the least restrictive and that the present statute does not pass this muster.

The reality is that the method by which the State of Louisiana has sought to enable this compelling state interest to be fulfilled is no different than other legitimate and court sanctioned purposes when the interests of minors are involved. The legitimate prohibition of sale to minors of tobacco, alcohol, drugs and other harmful materials is well established in law. The legal restriction of participation by minors in interactive games of chance is not questioned. Regulation by proscribing conduct of those other than minors in contractual dealings with them is the least restrictive and most effective method of protecting legitimate public interests and those of minor children.

The overriding and main thrust of plaintiffs' complaint is that Louisiana has chosen to regulate by prohibited conduct, actions that the industry and the members of the plaintiff organizations claim to be potentially "chilling" to the protected commercial free speech of their members. The State of Louisiana believes that it is the activity and the mental and physical well being of the minors who are exposed to it that are being regulated by the statute.

Plaintiffs state that the regulation of these "M" rated videos would have a chilling effect on the artistic pursuits of their creators (and certainly the

5

pocketbooks of their distributors and manufacturers).  However, the same "chilling effect" as alleged in their complaint is already a self imposed and voluntary regulation by their own industry.  Both rating systems and restricted sales to minors are already part of the plaintiffs' stated business practices to which they claim to adhere. No chilling effect currently exists nor will exist until a particular video game is found to be violative of the statute.  Only then do criminal penalties go into effect and criminal prosecution may occur.

## II.      LEGAL STANDARD

Plaintiffs must prove four pre-requisites to be entitled to the extraordinary relief of a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm, for which they have no adequate remedy at law; (3) that greater injury will result from denying the preliminary injunction than from its being granted; and (4) that a preliminary injunction will not disserve the public interest.  Canal Author. v. Callaway, 489 F. 2d 567, 572 (5th Cir. 1974) (en banc).  If a party fails to meet any of the four requirements, the Court cannot grant the preliminary injunction.  See Allied Marketing Group, Inc. v. CDL Marketing, Inc., 878 F. 2d 806, 809 (5th Cir. 1989); Canal Author., 489 F. 2d at 576.

## III.     PLAINTIFFS FAIL TO MEET THE LEGAL STANDARD FOR A PRELMINARY INJUNCTION

First. Plaintiffs have failed to establish a substantial likelihood of success on the merits.  Plaintiffs' claims are premature.  La. R.S. 14:91.14 provides for a

6

judicial determination that a particular video game meets the criteria set forth prior to any criminal action being brought. Thus, Louisiana law does not impose any prior restraint on Plaintiffs; indeed, the only restraint in effect is Plaintiffs' voluntary agreement not to sell games carrying an "M" rating to minors. Until such time as a declaratory judgment is rendered decreeing that a particular video game violates the statute, Plaintiffs have nothing to enjoin. Additionally, a facial attack on a statute requires Plaintiffs to show that there is no way that the statute could be interpreted in a constitutional manner. It is submitted that requiring a judicial determination prior to the imposition of criminal penalties makes this statute constitutional. A motion to dismiss is pending, which further limits Plaintiffs' chance of success on the grounds that Article III case or controversy is lacking and Pullman abstention should be ordered.

Second, Plaintiffs cannot show irreparable harm. Plaintiffs contend that the loss of First Amendment freedoms in and of itself constitutes irreparable harm, which, while agreed on in the jurisprudence, is not applicable in this case. Until such time as a declaratory judgment is rendered regarding any video game, no harm, irreparable or otherwise, occurs. Even at the point when a particular game is declared to be covered by the statute and its sale prohibited to minors, there is a substantial question as to whether such an age-based restriction does in fact constitute a First Amendment violation. Finally, the existence of the declaratory judgment procedure provides Plaintiffs with an adequate remedy at law as Plaintiffs have the right to either initiate an action of their own or contest the

Case 3:06-cv-00431-JJB-CN    Document 18    06/27/2006    Page 7 of 13

applicability of the statute to a particular video game in an action brought by the district attorney.

Third, the public interest of Louisiana is best expressed by the actions of its duly elected Legislators. Since Plaintiffs face no imminent threat from the existence of this statute, they cannot show that there is a greater threatened injury to the Plaintiffs sufficient to overcome the State's interest in the protection of its minor citizens and the deference to its duly passed laws.

Fourth, enjoining this statute will completely frustrate the compelling public interest of the citizens of Louisiana as expressed by their Legislature in a case where there is no limit placed on potentially protected expression.

A court should not freely enjoin an action of a legislature, because "it is clear than a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." Coalition for Economic Equity vs. Wilson, 122 F.3rd 718 (9th Cir 1997). Further, a state has an "interest in the well being of its youth." ACLU vs. Reno, 117 S.Ct. 2329 (1997) The plaintiffs begin their argument with the proposition that the government cannot prohibit an idea simply because society finds the idea itself offensive or disagreeable, citing Texas v. Johnson, 491 U.S. 414 (1989). That case had nothing to do with interactive and violent video games. During the 1984 Republican National Convention in Dallas, Texas, respondent Johnson participated in a political demonstration to protest the policies of the Reagan administration and some Dallas-based corporations. After a

march through the city streets, Johnson simply burned an American flag while protesters chanted.

However, in the Johnson case, the court cited its prior case of <u>United States v. O'Brien</u>, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, which upheld the existence of an important governmental interest in regulating nonspeech which could justify incidental limitations on First Amendment freedoms when speech and nonspeech elements are combined in the same course of conduct. Mr. O'Brien was convicted of a federal statute prohibiting the burning of his draft registration card and alleged that such action was protected free speech. In upholding the conviction, the court said specifically that "We do not suggest that the First Amendment forbids a State to prevent "imminent lawless action.".

Given that there is no present justiciable controversy because Plaintiffs' claims are premature, and that there is no threat of immediate or irreparable harm to Plaintiffs, it would do substantial disservice to the public interest to enjoin this law.

## IV. <u>VAGUENESS</u>

Plaintiffs assert that the statute is void for vagueness because it does not give notice of what is prohibited, the terms of the statute have no clear meaning and that the statute will lead to enforcement on an *ad hoc* and an unfair subjective basis. In this argument the plaintiffs confuse the issue of vagueness with extraordinary protection from invidious discrimination. No specific video games are noted and the proscribed conduct is tempered by the infusion of the

9

requirement of inquiry into community standards. The statute contemplates that there are a number of legitimate video games which, although violent in nature, will not be so morbid as to require extraordinary protection from sale to minors.

In addition, the statute, by its very terms, implies that preliminary findings of fact be made prior to the infliction of criminal penalties. Any contemplated vagueness in the statute inures to the benefit of a potential defendant who is protected from any imminent harm by the requirement of some preliminary findings by the trier of fact. The position of the plaintiffs is such that there could never be any regulation of violent video games, no matter how gruesome, horrendous or how effective they may be in promoting and making murder and other violent behavior acceptable for minors.

Unlike any other statute which has come before the courts, and before any criminal proceeding can be brought, the court must first find that three preliminary factual determinations are present. To quote the first section of the statute:

"A. An interactive video or computer game shall not be sold, leased or rented to a minor if the trier of fact determines **all of the following:**

> (1) The average person, applying contemporary community standards, would find that the video or computer game, taken as a whole, appeals to the minors morbid interest in violence.
> (2) The game depicts violence in a manner patently offensive to prevailing standards in the adult community with respect to what is suitable for minors.
> (3) The game, as a whole, lacks serious literary, artistic, political or scientific value for minors."

Case 3:06-cv-00431-JJB-CN     Document 18     06/27/2006     Page 10 of 13

Thus a very exacting and specific burden is placed upon the state to prove that all of these exist prior to the commencement of a criminal prosecution. The statutory insistence of these preliminary findings is to satisfy the very protection that the Constitution requires. The particular statute in question allows for the product's violent nature to be determined in advance and affords any potential defendant the opportunity to prove that any one of the preliminary findings does not exist to avoid the consequences of the statute. Far from vague, the statute sets forth that specific findings of fact will be made in advance of any applicability of the statute to any particular video game, such that all affected parties can tailor their conduct accordingly for compliance therewith.

## V.    THE STATUTE DOES NOT VIOLATE EQUAL PROTECTION GUARANTEES

Plaintiffs' final argument is that the statute creates a violation of the equal protection clause of the Constitution. They assert that these restrictions do not apply to other media, including television, movies, books, etc. Plaintiffs again are attempting to hide behind a brown wrapper. All other forms of media are not interactive. Other forms of media do not give visual, auditory and other sensory feelings of feedback and encouragement, etc., when the viewer complies with instructions to do violence. Interactive video games which operate to create volition of minors to act in murderous and other extremely violative manners, with the reward of winning and with the added encouragement of the narrator to be even more violent are a much different form of media than those cited.

## VI.  CONCLUSION

If viewed with the transparency of what is the reality of what is being proscribed by the state of Louisiana, the extraordinary protective procedural and substantive requirements prior to imposing any penalty, and the substantive and legitimate state interest to protect its children and others from violent behavior, the present statute is truly the legitimate and lawful standard of how and what could and should be regulated by this type of statute.  For the reasons advanced above, Plaintiffs have failed to demonstrate their entitlement to a preliminary injunction and their request for one should be denied.

Respectfully submitted,

**CHARLES C. FOTI, JR.**
**ATTORNEY GENERAL**

BY:      **s/David G. Sanders**
**DAVID G. SANDERS, Bar Roll No. 11696**
**BURTON P. GUIDRY, Bar Roll No. 06439**
**PATRICIA H. WILTON, Bar Roll No. 18049**
**ASSISTANT ATTORNEYS GENERAL**

**LOUISIANA DEPARTMENT OF JUSTICE**
**LITIGATION DIVISION**
**P.O. BOX 94005**
**BATON ROUGE, LA 70804-9005**
**TELEPHONE: (225) 326-6300**
**FACSIMILE:   (225) 326-6490**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all <u>pro</u> <u>se</u> parties to this proceeding by mailing the same to each by first class United States mail, properly addressed and postage prepaid on this 27th day of June, 2006.


**/s    David G. Sanders**
**DAVID G. SANDERS**


James A. Brown
George Denegre, Jr.
Liskow & Lewis
One Shell Square
701 Poydras Street, Ste. 5000
New Orleans, LA 70139-5099