IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION AND ENTERTAINMENT MERCHANTS ASSOCIATION, | * * * * | |
| Plaintiffs, | * * | CIVIL ACTION NO. 06-431-JJB-CN |
| vs. | * * | |
| CHARLES C. FOTI, JR., in his official capacity as Attorney General of the State of Louisiana; and DOUG MOREAU, in his official capacity on behalf of himself as District Attorney for the Parish of East Baton Rouge, and on behalf of a class of similarly situated individuals in their official capacities, | * * * * * * * * * | SECTION "D"<br><br>Judge James J. Brady |
| Defendants. | * | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs Entertainment Software Association ("ESA") and Entertainment Merchants Association ("EMA") submit this Reply memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction preventing Defendants and their officers, employees, and representatives from enforcing La. R.S. 14:91.14 (hereinafter, the "Act"). This Reply is made in response to the Opposition submitted on June 27, 2006 by Defendant Attorney General Charles C. Foti.[1]

---

[1] The Attorney General also submitted a Motion to Dismiss on the same date. To the extent the arguments in the Motion to Dismiss overlap with the arguments made in the Opposition, Plaintiffs address those here, but reserve their right to file a Response to the Motion to Dismiss pursuant to the Court's normal rules for responding to motions.

Dockets.Justia.

## BACKGROUND

Plaintiffs seek to enjoin enforcement of the Act on First Amendment grounds. As explained in Plaintiffs' opening brief, the Act, if effective, would result in censorship and limit the distribution of some of the creative works produced and distributed by Plaintiffs' members, based solely on their expressive content. Pls.' Mem. at 3, 5. This content-based suppression of speech cannot survive strict scrutiny, *see id.* at 7-14, and indeed, the Attorney General's Opposition fails to suggest seriously how the Act might surmount this hurdle. Plaintiffs assert both the rights of their members and the rights of willing listeners. *Id.* at 3; Compl. ¶ 13.

## ARGUMENT

### I. THE ATTORNEY GENERAL'S PROPOSED "PRELIMINARY JUDICIAL DETERMINATION" DOES NOT ALTER THE COURT'S PRELIMINARY INJUNCTION ANALYSIS.

The bulk of the Attorney General's arguments against a preliminary injunction are premised on the strained notion that the Act can be read to require a judicial determination whether certain games are covered by the Act before a criminal prosecution can go forward. The Attorney General does not elaborate on the rules or procedures that it believes would be applicable in this judicial proceeding, which is not mentioned anywhere in the text of the Act. Notwithstanding the Attorney General's inventive argument, a preliminary injunction should issue, for at least three reasons.

*First*, the Attorney General's reading of the Act is implausible. Nothing in the Act's text provides for a preliminary judicial determination or "declaratory judgment" procedure, as the Attorney General suggests. All that the language states is that a seller of games will be held to have violated the law when "the trier of fact determines" that a game distributed to a minor met the statutory criteria. If the statute were intended to provide for advance judicial determinations

concerning which games are covered, one would at least expect that it would explain who could initiate such a proceeding, where it would be filed, etc. Given the absence of such specifics, it is evident that the "trier of fact" mentioned in the law is the court or jury at a criminal trial initiated after sales to minors have taken place.

Indeed, the Attorney General's reading is inconsistent with longstanding interpretation of the State's statute restricting sexual materials deemed "harmful to minors," which served as a model for the Act. The "harmful to minors" statute contains a similar provision defining restricted "[m]aterial harmful to minors" in part by whether "the trier of fact determines that the average person applying contemporary community standards would find that the work or thing is presented in a manner to provoke or arouse lust, passion, or perversion or exploits sex." La. R.S. 14:91.11. Yet it does not appear that criminal prosecutions under this statute have ever involved a preliminary determination by a fact-finder that the definition applies. *E.g., State v. Lisotta*, 712 So. 2d 525, 527 (La. App. 1998); *State v. Anderson*, 540 So. 2d 974, 975 (La. App. 1989). There is no reason to think that the Act, using parallel language, should be interpreted any differently.

*Second*, even if the Act could be read as providing for prior judicial determinations about which games are covered, it would remain unconstitutional as a content-based suppression of speech. The principal constitutional flaw in the Act is that it suppresses speech based on the content of that speech and fails strict scrutiny – fundamental problems that are not cured even if, as suggested by the Attorney General, a judicial fact-finder decides whether an individual game is covered by the Act before a criminal prosecution. The State may not criminalize speech outside certain very narrow categories – such as obscenity – which are not at issue here. The Attorney General does not dispute that *some* games will be covered by the Act, and Plaintiffs contend that the restriction of *any* game to a minor based on whether it contains "violent" content

is content-based censorship and impermissible under the First Amendment, so the Act will undoubtedly restrict at least some speech of Plaintiffs' members. Thus, the Attorney General is incorrect that "requiring a judicial determination prior to the imposition of criminal penalties makes this statute constitutional." Opp. at 7. Whether or not such a determination is made before criminal penalties are imposed, the State is still suppressing speech based on the content of the speech – and that is unconstitutional.

Indeed, the separate judicial determination the Attorney General is proposing would only create additional burdens on the constitutional rights of Plaintiffs' members. Plaintiffs' members would be forced to litigate whether any particular game is covered by the Act – and whether it is constitutional to do so – in jurisdiction after jurisdiction. There are potentially hundreds of games containing depictions of violence that some law enforcement official in some part of the State might consider to be subject to this advance process. And the Attorney General makes no suggestion that one fact-finder's determination as to whether any one game is covered would be binding on fact-finders in any other jurisdiction, or even successive fact-finders in the same jurisdiction.[2] This scheme would only further burden Plaintiffs' members' exercise of their First Amendment rights.[3]

*Third*, absent an injunction, the Act will still have a substantial chilling effect on both video game developers and retailers, even pending the outcome of the Attorney General's proposed game-by-game judicial review. Developers may refrain from including certain content

---

[2] Indeed, given that a fact-finder must apply "contemporary community standards" to determine whether an individual game is covered, that question would have to be litigated in multiple jurisdictions because the answer may differ from jurisdiction to jurisdiction within the State.
[3] Nor does the Attorney General's proposed preliminary judicial determination alleviate the Act's unconstitutional vagueness problem. The Attorney General still does not address that a reasonable manufacturer or retailer would be unable to understand the statute's vague and unclear terms in advance of the State's suppression of its speech. Pls.' Mem. at 14-16.

in their games for fear that such content may trigger a judicial proceeding and/or finding that the game is covered. *See* Price Decl. ¶¶ 8-15. And retailers may decide not to stock games that might end up being restricted to minors on the basis that they will be limited in their ability to sell them once a judicial determination has been made. *See* Andersen Decl. ¶¶ 11-17; Lowenstein Decl. ¶ 13. Moreover, the Attorney General's suggested mirage of a quick, easy, and thorough judicial determination is not grounded in the text of the Act or in precedent. As explained above, a determination of whether games are covered by the Act may proceed on a piecemeal basis, leaving the status of many games in legal limbo pending the disposition of possibly hundreds of judicial proceedings. In the meantime, protected speech will be chilled.[4]

## II. THE ATTORNEY GENERAL'S ADDITIONAL ARGUMENTS ARE WITHOUT MERIT.

The Attorney General's additional arguments against a preliminary injunction are meritless. First, the Attorney General suggests that the Act regulates conduct, rather than speech, comparing the Act's restrictions to laws restricting tobacco or alcohol to minors. Opp. at 5, 9. This ignores a settled line of precedent establishing that video games are protected as speech. *See* Pls.' Mem. at 7-8 (citing cases). Moreover, the Act clearly targets the communicative aspect of the games – it forbids the sale, lease, or rental of games based on the content of the games themselves. Act, § 91.14(A).

The Attorney General also argues that the State would be somehow irreparably harmed if the Act is enjoined. But when First Amendment protections are involved, the balance of equities weighs in favor protecting First Amendment rights rather than the State's interest in

---

[4] The Attorney General suggests that Plaintiffs' members are already "self-censoring" by utilizing the ESRB rating system. Opp. at 6-7. But that voluntary measure certainly does not give the State license to impose its own separate content-based restrictions, any more than the existence of MPAA movie ratings gives the State license to restrict the viewing of certain films.

-5-
Case 3:06-cv-00431-JJB-CN   Document 22-2   06/29/2006   Page 5 of 8

in their games for fear that such content may trigger a judicial proceeding and/or finding that the game is covered. *See* Price Decl. ¶¶ 8-15. And retailers may decide not to stock games that might end up being restricted to minors on the basis that they will be limited in their ability to sell them once a judicial determination has been made. *See* Andersen Decl. ¶¶ 11-17; Lowenstein Decl. ¶ 13. Moreover, the Attorney General's suggested mirage of a quick, easy, and thorough judicial determination is not grounded in the text of the Act or in precedent. As explained above, a determination of whether games are covered by the Act may proceed on a piecemeal basis, leaving the status of many games in legal limbo pending the disposition of possibly hundreds of judicial proceedings. In the meantime, protected speech will be chilled.[4]

## II. THE ATTORNEY GENERAL'S ADDITIONAL ARGUMENTS ARE WITHOUT MERIT.

The Attorney General's additional arguments against a preliminary injunction are meritless. First, the Attorney General suggests that the Act regulates conduct, rather than speech, comparing the Act's restrictions to laws restricting tobacco or alcohol to minors. Opp. at 5, 9. This ignores a settled line of precedent establishing that video games are protected as speech. *See* Pls.' Mem. at 7-8 (citing cases). Moreover, the Act clearly targets the communicative aspect of the games – it forbids the sale, lease, or rental of games based on the content of the games themselves. Act, § 91.14(A).

The Attorney General also argues that the State would be somehow irreparably harmed if the Act is enjoined. But when First Amendment protections are involved, the balance of equities weighs in favor protecting First Amendment rights rather than the State's interest in

---

[4] The Attorney General suggests that Plaintiffs' members are already "self-censoring" by utilizing the ESRB rating system. Opp. at 6-7. But that voluntary measure certainly does not give the State license to impose its own separate content-based restrictions, any more than the existence of MPAA movie ratings gives the State license to restrict the viewing of certain films.

enforcement. *See* Mem. 17-18 (citing cases). The case cited by the Attorney General, *Coalition for Economic Equality v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997), dealt with the standard for granting a stay on appeal, not with granting a preliminary injunction. In that case, the Ninth Circuit held that it should not grant a stay of its own decision *overturning* a preliminary injunction pending a further appeal, because a stay would effectively extend a preliminary injunction already found to be legally flawed. Here, in contrast, the Plaintiffs are likely to succeed on the merits, and the Court must the balance the minimal burden on the State against the harm suffered by Plaintiffs.

Nor do the arguments made in the Attorney General's Motion to Dismiss justify the denial of a preliminary injunction. Even accepting the Attorney General's interpretation of the Act – which injects a preliminary judicial determination into the criminal regime – Plaintiffs still have standing to bring a facial challenge to the Act's restrictions both because their First Amendment rights would be burdened by being forced to engage in costly and time-consuming game-by-game piecemeal litigation, and because their First Amendment rights will be chilled in any event while awaiting these determinations, as explained above. Thus, Plaintiffs are subject to an immediate injury, regardless of the Act's construction. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (finding that association of booksellers had standing to bring pre-enforcement challenge to statute and holding that in First Amendment context, the danger of statute threatening legal sanctions for expressive content "is, in large measure one of self-censorship; a harm that can be realized even without an actual prosecution"); *Dombrowski v. Pfister*, 380 U.S. 479, 486-87 (1965); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) ("Controlling precedent thus establishes that a chilling

of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing.").

The Attorney General's argument for *Pullman* extension fares no better. As explained above, the language of the Act itself is not genuinely ambiguous and thus *Pullman* abstention is unwarranted. *See Lipscomb v. Columbus Municipal Separate School Dist.*, 145 F.3d 238, 243 (5th Cir. 1998) ("*Pullman* does not command district courts to abstain simply to permit state review of an unambiguous statute that has previously never been interpreted by a state court."). Moreover, as also explained above, the Attorney General's proposed limiting construction of the Act would not render adjudication of the First Amendment issues in this case unnecessary. The Act would still be targeting fully protected speech without a sufficient constitutional justification. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984) (abstention appropriate where there are "difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided" but "federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation that will render unnecessary' adjudication of the federal constitutional question") (citation omitted). Abstention is also particularly disfavored when a party brings a facial challenge to a statute on First Amendment grounds. *See Zwickler v. Koota*, 389 U.S. 241, 252 (1967). Finally, notwithstanding the *Pullman* argument, Plaintiffs would still be entitled to a preliminary injunction while the outcome of any certified question was proceeding, in order to ensure their First Amendment rights are protected in the interim.[5]

---

[5] Indeed, *Pullman* abstention would not mean dismissal of the case – the Court would still retain jurisdiction and merely stay the federal case while any state court proceedings were resolved. *Ziegler v. Ziegler*, 632 F.2d 535 (5th Cir. 1980).

## CONCLUSION

For the foregoing reasons and those given in Plaintiffs' opening brief, the Act should be preliminarily enjoined.

Respectfully submitted,

*/s/ James A. Brown*

James A. Brown, T.A. (Bar #14101)
George Denegre, Jr. (Bar #8387)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

and

Paul M. Smith
Katherine A. Fallow
Matthew S. Hellman
JENNER & BLOCK LLP
601 13th Street, NW, Suite 1200
Washington, DC 20005
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Attorneys for Entertainment Software Association
and Entertainment Merchants Association

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served upon Charles C. Foti, Jr., in his official capacity as Attorney General of the State of Louisiana and Doug Moreau, in his official capacity as District Attorney for the Parish of Baton Rouge, by facsimile this 29th day of June 2006.

*/s/ James A. Brown*

627521_1.doc