FILED
U.S. DIST COURT
MIDDLE DIST. OF LA.

2006 JUL 17 PM 1:46

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION AND ENTERTAINMENT MERCHANTS ASSOCIATION | CIVIL ACTION NO. 06-431-JJB-CN |
| Plaintiffs | |
| VERSUS | SECTION |
| CHARLES C. FOTI, in his official capacity as Attorney General of the State of Louisiana; and DOUG MOREAU, in his official capacity on behalf of himself as District Attorney for the Parish of East Baton Rouge, and on behalf of a class of similarly situated individuals in their official capacities | JUDGE BRADY<br><br>COMPLAINT-CLASS ACTION |
| Defendants | |

## MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF WHICH IS OPPOSED BY PLAINTIFFS

COMES NOW John B. Thompson (hereinafter Thompson), an attorney licensed to practice law in the State of Florida, and states:

1. Thompson drafted this video game bill, which has now become law, at the request of Representative Roy Burrell (D-Shreveport).

2. Thompson testified twice on its behalf, once in the Louisiana House of Representatives and once in the Senate, where it was approved unanimously before being signed into law by Governor Blanco.

3. On November 3, 2005, Thompson argued before an Alabama trial court that the violent video game, *Grand Theft Auto: Vice City*, which is just one of the Mature-rated video games that plaintiffs herein seek to enable the video game industry to sell,

1

unimpeded, to children, is not even speech, let alone "First Amendment-protected speech." For example, hand-held controllers with which a teen operates these "games" deliver a jolt back into their hands to give them a visceral, pleasurable "buzz" when a car tire runs over a skull or a machete cuts off the head of a prostitute immediately after sexual intercourse. This is surely not "speech" in any First Amendment sense; these CDs are simply software that enable the operation of a powerful behavior modification appliance used by our military, for example, to get new teen recruits to kill by desensitizing them to the act of killing. Thompson has available to this court expert testimony in these regards, and it is chilling.

4. The Alabama Circuit Court had and has before it a wrongful death action filed by Thompson arising out of the killing of two Alabama police officers and a police dispatcher at the hands of a teen who literally trained on this cop-killing murder simulation "game," *Grand Theft Auto: Vice City*. This case was featured twice on CBS's *60 Minutes* last year and in the August issue of *Reader's Digest*. Thompson mentions this news coverage to underscore how mainstream and how credible is the evidence that these adult "games" are dangerous.

5. The Alabama Court, upon reading the brief of Thompson and upon hearing his oral argument on November 3, 2005, denied all of the video game industry's and retailers' various motions to dismiss, finding that the sale of these incredibly violent murder simulation "games" to minors is **not** protected by the First Amendment. More importantly, the industry and retailers, represented, respectively, by the two plaintiffs herein, appealed that decision to the Alabama Supreme Court, which recently affirmed, unanimously, the trial court's ruling. The case is proceeding to trial, as the First

Amendment issues have been addressed by the Alabama Supreme Court. This is the same First Amendment that the plaintiffs herein claim mandates the open sale of these adult games to children. Thus, Thompson is not only very familiar with the First Amendment, constitutional issues involved in the case before this honorable court, but he has been successful in arguing them. This court may want to hear what he has to say and can prove regarding the constitutionality of this law, especially since he drafted the law with First Amendment concerns in mind, having considered other federal court rulings on these issues raised by other laws.

6. Additionally, this court may benefit from evidence from four nationally recognized experts retained by Thompson, all of whom have testified before the United States Congress on the danger of selling these Mature-rated violent games to minors. Other federal courts have analyzed various video game laws and have variously held that there is no proof that these games are actually harmful. By contrast, all four of these experts have executed affidavits in the aforementioned Alabama wrongful death/products liability case, and they can inform this court, as witnesses, as to the need for this law because of the demonstrable harmfulness of the "games." Their testimony will also satisfy "strict scrutiny" concerns, as this testimony provides a factual foundation for the State's compelling public safety interest in keeping these murder simulation games out of the hands of minors. Thompson is delighted to provide these experts to the court toward that end.

7. One of these experts is Dr. John Murray, a psychologist loaned by Kansas State University to Harvard University for its landmark MRI brain mapping studies that prove these violent video games are processed in a different part of the brain in

3

adolescents and teens than in adults. Dr. Murray's expert testimony, available to this court, tracks the findings of the US Supreme Court's March 2005 ruling in *Roper v. Simmons*, authored by Justice Kennedy, which struck down the juvenile death penalty in part because of an *amicus curiae* brief submitted by six major health care organizations, including the American Medical Association, which proved, through an MRI study similar to what Thompson can offer, the dangerous ways in which *teen brains process and then act out emotion-driven data.*

8. Thompson previously served the Unites States District Court for the Southern District of Florida in the federal obscenity trial, *2 Live Crew v. Sheriff Navarro,* which resulted in the first verdict in history that a sound recording was obscene under *Miller v. California.* The music industry was lined up on the other side in that case, just as the heavily-funded video game industry and retailers are in this case.

9. The Attorney General of Louisiana has informed Thompson, through his office, of his approval of Thompson's participation in this case in the fashion requested.

10. Before filing this motion, Thompson informed plaintiffs' counsel yesterday of his intent to seek to serve this court as *amicus*. Remarkably, but not surprisingly, counsel for plaintiffs had this terse response: **"Our clients intend to oppose the motion."** It is highly instructive, because of the irony, that those in this "First Amendment" fight who posture as if they were the ones who seek *more* exchange of ideas, not less, who promote the notion that a free society is best served when information, ideas, and entertainment, including even adult entertainment thrown at children, must freely flow, are now the ones who seek to keep from this court what

4

Thompson knows and can prove about the constitutionality of this law and the scientific basis for it.

11. The fact is that the plaintiffs are the ones who want to keep not only this court but also parents in the dark about the content and the dangers of these Mature-rated killing games. They want to sell these games directly to children with no parents in sight, while claiming that all of this is "a parent's not the government's decision." The plaintiffs don't want this court to know about the Federal Trade Commission official findings that a major video game company, which helps fund plaintiff Entertainment Software Association herein, has been found guilty of *fraud* in marketing and selling a game—*Grand Theft Auto: San Andreas*—with hidden, embedded interactive anal and oral sex, to children. The plaintiffs don't want this court to know about the recent Harvard University findings that the industry's and retailers' voluntary rating system is a sham, as the ratings on the games do not disclose the sex and violence actually in the games. And these plaintiffs don't want Thompson to participate in this litigation because they know that he has all of the ten years of sworn testimony to Congress and to courts of law by representatives of these two specific plaintiffs which falsely claims that they are vigorously keeping these adult games out of the hands of children. Plaintiffs know that Thompson has the facts by which to prove that their scientific claims and their constitutional arguments are artifice.

12. Thus, the fact that the plaintiffs, who promote themselves as the friends of the First Amendment and cast the State of Louisiana as the enemy of free speech, while at the same time trying to exclude from this discussion the man who drafted the law, is a good enough reason alone to grant the undersigned *amicus* status in this case. Put

5

simply, what in the world are they afraid of? They're afraid that the truth might break out in this case. Every single legislator in Louisiana saw through the charade. Governor Blanco saw through the charade. Thompson was delighted to assist. He offers to help here as well.

13. Should this court approve of Thompson's motion, then Thompson anticipates filing his *amicus curiae* brief on behalf of law enforcement personnel and also on behalf of education groups. This latter group is an appropriate *amicus* in light of the fact that the maker of the *Grand Theft Auto* games, Take-Two Interactive Software, Inc., which is a charter member of the plaintiff Entertainment Software Association, is set to release for sale to children this coming fall a game called *Bully*, which is a Columbine simulator in which students can rehearse taking over their schools by bludgeoning their classmates and teachers with bats, shooting them with slingshots, body slamming them, punching them, kicking them, and sticking their heads into dirty toilets. The plaintiff herein is going to have to successfully defend the sale of *that* game to children in this instant action if it is to prevail herein, and it should be required to do so.

14. One week before "Columbine" occurred, Thompson predicted that it would happen on NBC's *Today* show, even identifying the game upon which Klebold and Harris literally *trained* to author the worst school massacre in American history. Last week the nation was reminded again that the teen killers of Columbine did in fact prepare for their mass murder on the video game *Doom*. If this video game law is struck down, then similar incidents in Louisiana will be more likely. What Thompson knows and can prove goes to the requirements of "strict scrutiny." What Thompson knows goes to the core of a state's right to assure public safety.

6

WHEREFORE, the undersigned respectfully moves this court to grant him the distinct privilege of participating in this matter in filing an *amicus curiae* brief, as he has in the past in another important matter, as set forth above.

### **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all pro se parties to this proceeding by mailing the same to each by first class United States mail, properly addressed and postage prepaid on this 11th day of July, 2006.

*[signature: JB Thompson]*

John B. Thompson, Attorney
Defendant and Co-Counsel
Florida Bar #231665
1172 South Dixie Hwy., Suite 111
Coral Gables, Florida 33146
305-666-4366
magiccity@comcast.net

7