| | |
|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION & ENTERTAINMENT MERCHANTS ASSOCIATION | CIVIL ACTION<br><br>NO. 06-431-JJB-CN |
| VERSUS | |
| CHARLES C. FOTI & DOUG MOREAU | |

## RULING ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS

1.  BACKGROUND

This litigation involves the constitutionality of Act 441 of the 2006 Regular Session of legislature of the State of Louisiana, which would prohibit the sale of certain video or computer games to minors ("the Act"). The Court entered final judgment on this case on December 5, 2006. At that time, Plaintiffs reserved their right to move for attorney's fees and costs pursuant to 42 U.S.C. § 1988. Plaintiffs now so move.

2.  STANDARD FOR AWARD OF ATTORNEY'S FEES AND COSTS

The award of attorney's fees in a civil rights action such as the present one is authorized by 42 U.S.C. §1988. That section provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs."

-1-

A.   "PREVAILING PARTY"

The term "prevailing party," used by Congress to designate those who are eligible to receive attorney's fees, is a "legal term of art" which means "one who has been awarded some relief by the court." **Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources**, 532 U.S. 598, 603 (2001). "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." **Texas State Teachers Ass'n v. Garland Independent School Dist.**, 489 U.S. 782, 792 (1989). It is this "material alteration of the legal relationship of the parties" that forms the "touchstone" of the prevailing party inquiry. **Id.** at 792-793.

Plaintiffs contend that they are the "prevailing party" within the meaning of §1988; as such, they request costs, including attorney's fees. Defendant Moreau has not disagreed that Plaintiffs are prevailing parties; however, Defendant Foti ("Foti", or "the Attorney General") has disagreed. Foti asserts that Plaintiffs are not 'prevailing parties' vis-à-vis *him* because only declaratory relief (and not injunctive relief) has been achieved as against him.

The Attorney General states that he "has no authority to enforce the Act" **[Rec. Doc. 66, p. 2.]**, citing this Court's order granting preliminary injunctive relief against defendant Moreau. **Entertainment Software Association v. Foti**, 451 F.Supp.2d 823, 827 (M.D. La. 2006). That is not quite true. This Court did not find that the Attorney General had *no* authority to enforce the Act, but rather that the Attorney General's authority in this matter

was "indirect." *Id.* The Attorney General *could* enforce the Act, provided that he sought and received court authorization to do so. *Id.*; *see* **LA. CONST. Art. 4, § 8**.

The Attorney General additionally argues that Plaintiffs have not obtained "judicial relief" because the declaratory judgment "requires no action (or cessation from action)" on his part, citing **Hewitt v. Helms**, 482 U.S. 755, 761 (1987). This is true, but not dispositive. That the judgment requires no *action* is a function of the nature of the sought-after relief: neither declarative nor injunctive relief require action on anybody's part. That the judgment requires no *cessation from action* is a function of the promptness with which Plaintiffs filed suit. The Act went into effect on June 15, 2006; Plaintiffs filed suit on June 16, 2006. There was simply no time for the Attorney General to act. As a result, there is no action requiring cessation.

The "judicial relief" obtained, rather, is the *prevention* of action. Absent the declaration, the Attorney General would have been able to enforce the Act by seeking leave from the courts to prosecute. Since the declaration, the Attorney General is no longer able to do so. **[Rec. Doc. 53.]**

"The real value of the judicial pronouncement," the Supreme Court said in *Hewitt v. Helms*, "is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff." 482 U.S. at 761. Because of the time factor here, however, there was no "behavior" of defendant Foti towards Plaintiffs. The dispute was about the *ability* of Foti to 'behave' (i.e., act) 'towards' (i.e., against) Plaintiffs. That dispute is now settled. As a result, there *will be* no "behavior" of defendant Foti towards Plaintiffs. This works a "material alteration of the legal relationship between the parties." *Garland*, 489 at 792.

Therefore, Plaintiffs are "prevailing parties" within the meaning of §1988.

The Fifth Circuit has determined that "for a party to qualify as a prevailing party it must (1) obtain actual relief . . . (2) that materially alters the legal relationship between the parties, and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment." **Energy Management Corp. v. City of Shreveport**, 467 F.3d 471, 482 (5th Cir. 2006) (internal citations and punctuation omitted). The first and second requirements are met for the reasons stated above. The third requirement is also met by the declaratory judgment. It has long been recognized that "[t]he [declaratory judgment] procedure is especially useful in avoiding the necessity . . . of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights, because of a fear of incurring damages." **Texas Employers' Ins. Ass'n v. Jackson**, 862 F.2d 491, 505 (5th Cir. 1988), citing **Perez v. Ledesma**, 401 U.S. 82, 112 (1971) (opinion of Justice Brennan, joined by Justices White and Marshall, concurring in part and dissenting in part) (quoting Senate Report No. 1005, 73d Cong., 2d Sess. (1934)). The direct benefit at the time of judgment to Plaintiffs is that they no longer are forced to choose between "having to act at [their] peril" or "abandon[ing] [their] rights."

B.     PROPRIETY OF AWARD OF ATTORNEY'S FEES AND COSTS

The purpose of §1988 is to provide "reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." **Blanchard v. Bergeron**, 489 U.S. 87, 93 (1989). Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances

would render such an award unjust." **Hensley v. Eckerhart**, 461 U.S. 424, 429 (1983). The Fifth Circuit has interpreted this to mean that "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course." **Cruz v. Hauck**, 762 F.2d 1230, 1233 (5th Cir. 1985).

Defendants allege no special circumstances which would render an award unjust, and this Court finds none. An award of fees and costs is proper.

3. CLAIMS OF IMMUNITY

The Attorney General asserts that an award of attorney's fees against him is precluded by both Eleventh Amendment immunity and "absolute prosecutorial immunity." **[Rec Doc. 66, pp. 7, 8.]**

   A. ELEVENTH AMENDMENT IMMUNITY

The Supreme Court has made perfectly clear that Eleventh Amendment immunity *does not* bar an award of attorney's fees pursuant to 42 U.S.C. § 1988.

> Congress has plenary power to set aside the States' immunity . . . in order to enforce the Fourteenth Amendment. When it passed the [Civil Rights Attorney's Fees Awards] Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities.

**Hutto v. Finney**, 437 U.S. 678, 693-694.

The Fifth Circuit, too, has made this clear. See, e.g., **Scott v. Flowers**, 910 F.2d 201, 213 n.25 (5th Cir. 1990) ("*Hutto* undeniably authorizes attorneys' fees against the state where officials are sued in their official capacity.") The Attorney General was sued in

his official capacity.

For these reasons, Eleventh Amendment immunity is not available in this case.

B.  ABSOLUTE IMMUNITY

The Supreme Court has made perfectly clear that "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." **Hafer v. Melo**, 502 U.S. 21, 25 (1991), citing **Kentucky v. Graham**, 473 U.S. 159, 167 (1985). Absolute prosecutorial immunity, however, is only a defense to personal-capacity actions. **Burge v. Parish of St. Tammany**, 187 F.3d 452, 467 (5th Cir. 1999 ) (describing "absolute prosecutorial immunity" as a "form of personal or individual immunity . . . not available in an official capacity suit.").

Because this is an official-capacity suit, and not an individual-capacity suit, this argument is without merit.

4.  CALCULATION OF ATTORNEY'S FEES AND COSTS

The Supreme Court has provided that the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. **Hensley**, 461 U.S. at 433, 103 S.Ct. 1933. The product of these two factors – number of hours and the hourly rate – is known as the "lodestar." **Sims v. Jefferson Downs Racing Ass'n, Inc.**, 778 F.2d 1068, 1084 (5th Cir. 1985).

Once the lodestar has been calculated, the district court must then address its

reasonableness as a whole, *Hensley*, 461 U.S. at 434, *Sims*, 778 F.2d at 1084, by considering the factors set out by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Id.*, 488 F.2d at 717-19. After considering these factors, the court may adjust the lodestar upward or downward. ***Walker v. United States Dep't of Hous. and Urban Dev.***, 99 F.3d 761, 771 (5th Cir.1996).

### A. DETERMINATION OF THE LODESTAR
#### I. REASONABLE HOURLY RATE

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.'" ***Hopwood v. State***, 236 F.3d 256, 281 (5th Cir. 2000). The relevant legal market is the community where the district court sits. ***Tollett v. City of Kemah***, 285 F.3d 357, 368 (5th Cir. 2002). In this case, the community is Baton Rouge. The reasonable hourly rates for a particular community is established through affidavits of other attorneys practicing in that community, *Tollett*, 285 F.3d at 368, or by reference to rates awarded in prior cases. *See, e.g.*, ***Dinet***

*v. Hydril Co.*, 2006 WL 3904991, at *7 (E.D.La. 2006). Plaintiffs' counsel have submitted only their own assertions that their rates are reasonable. Defendant contests Plaintiffs' assertions by reference to rates awarded in prior cases.

In the Middle District, this Court has found as reasonable rates of $125/hour, *Conestoga-Rovers & Assoc. v. Vintage Petroleum*, No. 03-535 (03/2005), *Campbell v. Campbell*, No. 99-237 (02/2001); $150/hour, *Wooley v. Lapeyrouse*, No. 96-007(07/2001), *Schexnayder v. Bonfiglio*, No. 02-1147 (03/2006); and $175/hour, *Williams v. Alsen St. Irma Lee Volunteer Fire Dep't.*, No. 04-076 (03/05). These decisions were made without reference to the experience of the attorneys litigating the cases. Experience, however, should be taken into account. See **Blum v. Stenson**, 465 U.S. 886, 895, n.11 (1984). Based on my own familiarity with the local market, I believe Baton Rouge rates to be roughly equivalent to those of New Orleans, where the Eastern District Court sits.[1] The rates there correspond with the experience of the attorneys involved. A review of that court's records provides the following sampling of recent attorney's fees awards from which guidance for the present case may be gleaned.

Last year, courts awarded fees of $150/hour to an attorney with 7 years of experience, **Dinet**, 2006 WL 3904991, at *8; $175/hour to an attorney with 13 years of experience, **Downey v. Strain**, 2006 WL 1581234, at *3 (E.D.La. 2006); $225/hour to an attorney with 24 years of experience, *id.*, and $260/hour to an attorney with 39 years of experience, **Speaks v. Kruse**, 2006 WL 3388480, at *3 (E.D.La. 2006). In **Green v. Administrators of Tulane Educational Fund**, 284 F.3d 642 (5th Cir. 2002), the Fifth

---

[1] This is especially true in light of the effects of Hurricanes Rita and Katrina.

Circuit approved awards of $110/hour to an attorney with experience of "just over one year" and $175/hour to an attorney with fourteen years of experience. *Id.* at 662. In *Henderson v. Eaton*, 2002 WL 31415728 (E.D.La. 2002), the court approved an award of $225/hour for an attorney who "has more than twenty-five years experience, has appeared and argued before the United States Supreme Court and three United States Courts of Appeals, and has contributed to the literature on federal civil procedure. *Id.* at *5.

Plaintiffs in this case seek recompense for the service of twelve attorneys: from the firm of Jenner & Block, attorneys Paul M. Smith ("PMS"), Katherine A. Fallow ("KAF"), Duane Pozza ("DP"), Elizabeth Valentina ("EV"), and Matthew S. Hellman ("MSH"); from the firm of Liskow & Lewis, attorneys James A. Brown ("JAB"), George Denegre, Jr. ("GDJ"), John C. Anjier ("JCA"), Brian A. Jackson ("BAJ"), Katherine S. Roth ("KSR"), Jason R. Johanson ("JRJ"), and Joe I. Giarrusso ("JIG"). Their experience[2] and the rates they request are as follows:

*Jenner & Block attorneys*

| | | |
|---|---|---|
| PMS | 27 years | $600 |
| KAF | 10 | $450 |
| DP | 4 | $325 |
| MSH | 4 | $325 |
| EV | 2 | $265 |

*Liskow & Lewis attorneys*

| | | |
|---|---|---|
| GDJ | 24 | $260 |
| JAB | 22 | $270 |
| BAJ | 21 | $255 |
| JCA | 16 | $230 |

---

[2] This information has been taken from the publicly available web sites of the firms:
Jenner & Block – http://www.jenner.com/people/people.asp
Liskow & Lewis – http://www.liskow.com/attorney.aspx

| | | |
|---|---|---|
| JIG | 6 | $170 |
| KSR | 5 | $170 |
| JRJ | 3 | $160 |

The court find that the requested rates are not in line with the reasonable rates that have been awarded in the Middle and Eastern Districts, and determines reasonable rates as follows:

*Jenner & Block attorneys*

| | | |
|---|---|---|
| PMS | 27 | $250 |
| KAF | 10 | $165 |
| DP | 4 | $130 |
| MSH | 4 | $130 |
| EV | 2 | $115 |

*Liskow & Lewis attorneys*

| | | |
|---|---|---|
| GDJ | 24 | $225 |
| JAB | 22 | $210 |
| BAJ | 21 | $210 |
| JCA | 16 | $185 |
| JIG | 6 | $140 |
| KSR | 5 | $135 |
| JRJ | 3 | $120 |

II.  NUMBER OF HOURS REASONABLY EXPENDED

The fee applicant bears the burden of proving the reasonableness of the number of hours claimed. **Hensley**, 461 U.S. at 437. The court may reduce the fee award if the documentation of hours is inadequate, *id.* at 433, or the hours are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. The billing record presents 452.75 hours related to this litigation spread among the attorneys, as follows:

*Jenner & Block attorneys*

| | |
|---|---|
| PMS | 17.5 |
| KAF | 76.5 |
| DP | 55.0 |
| MSH | 43.0 |
| EV | 33.75 |

*Liskow & Lewis attorneys*

| | |
|---|---|
| GDJ | 97.75 |
| JAB | 95.7 |
| BAJ | 0.25 |
| JCA | 2.75 |
| JIG | 0.75 |
| KSR | 1.25 |
| JRJ | 28.75 |

The court has reviewed the billing record and finds that the documentation is adequate and that no excessive, redundant, or otherwise unnecessary hours have been billed. The lodestar calculations are as follows:

*Jenner & Block attorneys*

| | | | | | |
|---|---|---|---|---|---|
| PMS | $250 | x | 17.5 | = | $ 4,375.00 |
| KAF | $165 | x | 76.5 | = | $12,622.50 |
| DP | $130 | x | 55.0 | = | $ 7,150.00 |
| MSH | $130 | x | 43.0 | = | $ 5,590.00 |
| EV | $115 | x | 33.75 | = | $ 3,881.25 |

*Liskow & Lewis attorneys*

| | | | | | |
|---|---|---|---|---|---|
| GDJ | $225 | x | 97.75 | = | $21,993.75 |
| JAB | $210 | x | 95.7 | = | $20,097.00 |
| BAJ | $210 | x | 0.25 | = | $     52.50 |
| JCA | $185 | x | 2.75 | = | $    508.75 |
| JIG | $140 | x | 0.75 | = | $    105.00 |
| KSR | $135 | x | 1.25 | = | $    168.75 |
| JRJ | $120 | x | 28.75 | = | $ 3,450.00 |

*Jenner & Block subtotal -- $33,618.75*

Case 3:06-cv-00431-JJB-CN    Document 76    04/10/2007    Page 11 of 15

*Liskow & Lewis subtotal – $46,375.75*

B. REASONABLENESS OF THE LODESTAR AND THE *JOHNSON* FACTORS

The lodestar may be adjusted according to a Johnson factor only if that factor is not already included by the lodestar. **Matter of Fender,** 12 F.3d 480, 487 (5th Cir. 1994). The Supreme Court has held that four of the *Johnson* factors are presumptively "subsumed within the initial calculation of the lodestar." **Pennsylvania v. Delaware Valley Citizen's Council**, 478 U.S. 546, 565 (1987). These factors are the "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained." *Id.* The Supreme Court has also barred the consideration of whether the fee was fixed or contingent. **Walker**, 99 F.3d at 772, citing **City of Burlington v. Dague**, 505 U.S. 557, 567 (1992).

The Fifth Circuit has held that three more of the *Johnson* factors are presumptively accounted for by the lodestar amount: the "time and labor involved", **Walker**, 99 F.3d at 771, any "special time limits imposed," *id.* at 772, and the "preclusion of other employment", **Shipes v. Trinity Industries**, 987 F.2d at 321-322 (5th Cir. 1993).

The factors not yet considered are now considered.

(a) *Customary fee*

Although the fees customarily paid in Washington, D.C. are substantially higher than those paid in Baton Rouge, the Court feels that, on the facts of this case, no adjustment is warranted.

-12-

(b) *Undesirability*

Plaintiffs' attorneys have not shown or alleged that they "were exposed to the scorn of the community or . . . other ill treatment" as a result of handling this case. **Riley v. City of Jackson, Miss.**, 2 F.Supp.2d 864, 878 (S.D.Miss. 1997). No adjustment is proper for this factor.

(c) *Nature and length of relationship with client*

To the knowledge of the Court, these attorneys have represented Plaintiffs in this one case. This fact warrants neither enhancement nor reduction of the lodestar.

(d) *Awards in similar cases*

The quantum of awards in similar cases is significantly higher than the award in this case. See *Entertainment Software Ass'n v. Granholm*, No. 05-73634 (E.D.Mich. 11/30/06) ($166,449); *Entertainment Software Ass'n v. Blagojevich*, No. 05-4265 (N.D.Ill. 8/9/06) ($510,258); *Video Software Dealers Ass'n v. Maleng*, No. 03-1245 (W.D.Wash. 9/21/04) ($344,700). This warrants an enhancement of the lodestar, but not by too much, as Plaintiffs were able to rely on the precedential value of those cases in this case. The court finds that a 15% upward adjustment is appropriate.

(e) *Recalculation in light of the lodestar factors*

*Jenner & Block subtotal* – $33,618.75 + 15% = $38,661.56

*Liskow & Lewis subtotal* – $46,375.75 + 15% = $53,332.11

IV. OTHER COSTS

Costs other than attorneys' fees shall be allowed to the prevailing party unless the

-13-

court otherwise directs. Fed.R.Civ.P. 54(d). The court directs that the determination of such costs be referred to the Clerk of Court.

4. CONCLUSION

This Court is dumbfounded that the Attorney General and the State are in the position of having to pay taxpayer money as attorney's fees and costs in this lawsuit. The Act which this Court found to be unconstitutional passed through committees in both the State House and Senate, then through the full House and Senate, and to be promptly signed by the Governor. There are lawyers at each stage of this process. Some of the members of these committees are themselves lawyers. Presumably, they have staff members who are attorneys as well. The State House and Senate certainly have staff members who are attorneys. The Governor has additional attorneys - the executive counsel. Prior to the passage of the Act, there were a number of reported cases from a number of jurisdictions which held similar statutes to be unconstitutional (and in which the defendant was ordered to pay substantial attorney's fees). The Court wonders why nobody objected to the enactment of this statute. In this court's view, the taxpayers deserve more from their elected officials.

For the reasons stated above, the Motion for Attorney's Fees and Costs is hereby **GRANTED IN PART**. Attorney's fees are awarded in the amount of $38,661.56 to Jenner & Block and in the amount of $53,332.11 to Liskow & Lewis and against the Attorney General and District Attorney Doug Moreau in solido.

Plaintiffs' request for costs other than attorney's fees is hereby **REFERRED** to the Clerk of Court.

Baton Rouge, Louisiana, April 10th, 2007.

_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA